**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

**TERENCE A. GRAGSTON,**

**Plaintiff,**

**v.**

**AMAZON LLC,**

**Defendant.**

**Case No. 1:25-cv-206**

**JUDGE DOUGLAS R. COLE**
**Magistrate Judge Litkovitz**

## OPINION AND ORDER

Defendant Amazon LLC moves to dismiss Plaintiff Terence A. Gragston's Amended Complaint (Doc. 17), which alleges race and disability discrimination, as well as retaliation. (Am. Mot. to Dismiss, Doc. 25).[1] Resolving that motion essentially boils down to one question—does a single use of a racial epithet, by a subordinate, directed at a supervisor, suffice to plausibly allege a hostile work environment? The Court concludes that it does not, at least not without more factual context than Gragston supplies here, and thus **GRANTS** Amazon's motion.

## BACKGROUND

Gragston initiated this case on April 2, 2025, when, proceeding pro se as "John Doe," he filed a Motion for Leave to Proceed in forma pauperis (Doc. 1), and a Motion to Proceed Under a Pseudonym (Doc. 2). About a month later, the Magistrate Judge granted the former motion. (Doc. 3). After some back and forth regarding service of

[1] Amazon filed a Motion to Dismiss (Doc. 24), on December 9, 2025, and an Amended Motion to Dismiss (Doc. 25), on December 10, 2025. The Court treats the latter as the operative motion.

process, (*see* Docs. 5, 8, 9, 10, 11, 12), and a successful motion for pro se electronic filing rights, (*see* Docs. 6, 7), the Magistrate Judge denied Gragston's motion to procced pseudonymously and ordered him to file an amended complaint identifying himself as required by Federal Rule of Civil Procedure 10(a). (Doc. 14). Gragston timely filed an amended complaint as ordered. (*See* Doc. 17).

The amended complaint's factual allegations are brief and to the point. Gragston, an African American[2] disabled veteran, alleges that he worked at Amazon as an area manager from November 21, 2021, until July 27, 2024. (*Id.* at #84–85). On April 19, 2024, "a subordinate, Ja'Marcus Holmes, directed a racial slur toward [Gragston], stating, 'Ain't nobody talking to you, n***a.'" (*Id.* at #85 (alteration added)). Gragston immediately reported the incident to his manager. (*Id.*). Despite the report, however, "Amazon failed to take any corrective action, allowing a racially hostile work environment to persist." (*Id.*).

Separately, another "subordinate," Raven Freeman, at some unknown point, began to spread rumors that Gragston was selling drugs, which harmed Gragston's reputation and undermined his ability to perform at work. (*Id.*). Gragston reported Freeman's gossip to Human Resources. (*Id.*). But again, Amazon took no corrective action. (*Id.*). Nor was that the last time Gragston raised similar concerns. He submitted numerous internal complaints "regarding racial discrimination, defamation, and hostile workplace conditions" between April and July 2024, all to no

[2] Gragston does not specifically identify himself as African American. But giving Gragston, a pro se plaintiff, the benefit of the doubt, the Court infers Gragston's race based on the allegations in the amended complaint.

avail. (*Id.*). At some unspecified point, Gragston's supervisors suggested that he should "move on" to another company. (*Id.*). And on July 27, 2024, Gragston resigned because of "intolerable" work conditions. (*Id.*).

Based on those allegations, Gragston asserts (1) a claim for "Hostile Work Environment/Racial Discrimination" under Title VII, which the Court will construe as separate hostile work environment and disparate treatment claims, (2) a claim for retaliation under Title VII, (3) a disability discrimination claim under the Americans with Disabilities Act (ADA), and (4) a claim for "constructive discharge" under both Title VII and the ADA. (*Id.* at #85–86).

In support of its motion to dismiss, Amazon argues that counts (1)–(3) fail to state a claim. (Doc. 25, #122–128). Amazon also argues that Gragston's fourth count for "constructive discharge" is not a cognizable standalone claim. (*Id.* at #128). Gragston has responded, (Doc. 27), and Amazon replied, (Doc. 28). So the matter is ripe for review.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up) (citation omitted). While a "plausible" claim for relief does not require a showing of probable liability, it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.*

"In reviewing a motion to dismiss, [the Court] construe[s] the complaint in the light most favorable to the plaintiff, draw[s] all reasonable inferences in [his] favor, and accept[s] all well-pleaded allegations in the complaint as true." *Keene Grp., Inc. v. City of Cincinnati*, 998 F.3d 306, 310 (6th Cir. 2021) (citation omitted). But that does not mean the Court must take everything a plaintiff alleges at face value, no matter how unsupported. The Court may disregard "naked assertion[s]" of fact, "formulaic recitation[s] of the elements of a cause of action," and "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (cleaned up). Additionally, the Court may grant a motion to dismiss "on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989) (citations omitted). Because Gragston is proceeding pro se, the Court reviews his amended complaint under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## LAW AND ANALYSIS

### A. Gragston Fails to State a Hostile Work Environment Claim Because He Does Not Allege Sufficiently Severe or Pervasive Harassment.

Title VII prohibits employers from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of a racially hostile work environment, Gragston would ultimately need to show that "(1) [he] was a member of a protected class; (2) [he] was subjected to unwelcome [] harassment; (3) the harassment was based on race; (4) the harassment unreasonably interfered with [his] work performance by creating an intimidating, hostile, or offensive work environment; and

(5) the employer is liable." *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (citation omitted). "But those elements of proof constitute 'an evidentiary standard, not a pleading requirement.'" *Doe v. Blanche*, No. 25-1442, 2026 WL 1211480, at *4 (6th Cir. May 4, 2026) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012)). "At the motion to dismiss stage," the question is whether a district court, "drawing on its 'judicial experience and common sense,' c[an] reasonably infer" that Amazon subjected Gragston to a hostile work environment based on his race. *Id.* (quoting *Bruce v. Adams & Reese, LLP*, 168 F.4th 367, 377 (6th Cir. 2026)). To carry that burden, a plaintiff must allege facts plausibly suggesting that his "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ogbonna-McGruder v. Austin Peay State Univ.*, 91 F.4th 833, 839 (6th Cir. 2024) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)), *abrogated in part on other grounds by Kellar v. Yunion, Inc.*, 157 F.4th 855 (6th Cir. 2025)).

In their briefing, the parties' dispute as to this claim focuses solely on the significance of Holmes' one-time use of the n-word. In its motion, Amazon contends that Gragston's hostile work environment claim fails "because it rests exclusively on his allegation that a subordinate directed a racial slur towards him once." (Doc. 25, #123). And that, Amazon says, is insufficient to sustain a hostile work environment claim. (*Id.* at #123–24). Gragston responds, not by pointing to other factual allegations in his complaint, but rather solely by arguing that "being called the N-

word by a supervisor[3] … suffices by itself to establish a racially hostile work environment." (Doc. 27, #133 (quoting *Ayissi-Etoh v. Fannie Mae*, 712 F.3d 572, 580 (D.C. Cir. 2013) (Kavanaugh, J., concurring)). He says that "no single act can more quickly alter the conditions of employment and create an abusive working environment than the use of that epithet." (*Id.* (internal quotation mark omitted) (quoting *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001))). He also asserts that the Sixth Circuit has acknowledged that a "single use" of an epithet such as the n-word, "when occurring in the workplace and left uncorrected, may be sufficiently severe to state a hostile work environment claim."[4] (*Id.* at #133 (citation omitted)). In its reply, Amazon doubles down on its view that, in the Sixth Circuit, "a single incident involving a racial slur … *cannot* alone sustain a hostile work environment claim." (Doc. 28, #140–41 (emphasis in original) (collecting cases)).

---

[3] It is not entirely clear why Gragston is relying on case law involving a *supervisor's* use of an epithet directed at a subordinate, when here he alleges it was a subordinate (Holmes) who directed the epithet at a supervisor (Gragston). As further discussed below, that is a potentially important distinction. Supervisors, after all, typically are empowered to address misbehavior by subordinates. The same is not true in reverse.

[4] As Amazon suggests (but does not expressly state), Gragston seems to rely on AI-hallucinated caselaw in support of this point. (*See* Doc. 28, #141 n.2). The Court's independent review suggests the same. Gragston cites a case that he refers to as "*Latham v. Off. of Att'y Gen. of Ohio*, No. 20-4089, 2021 WL 1324065 (6th Cir. Apr. 9, 2021)." (Doc. 27, #133). True, there is a Sixth Circuit case that bears that name, but it is a published decision from 2005 that is not about hostile work environment claims or the use of racial epithets in the workplace. *See* 395 F.3d 261 (6th Cir. 2005). And, as best the Court can tell, the only Sixth Circuit case with the docket number "20-4089" is *United States v. Culver*, 20-4089, 2021 WL 4258764 (6th Cir. Sep. 20, 2021), which is a criminal case about sentencing. Finally, there is no case with the Westlaw citation "2021 WL 1324065." Accordingly, to avoid any such concerns going forward, the Court **FORMALLY WARNS** Gragston that any future reliance on AI-hallucinated caselaw in this litigation will result in sanctions, including monetary penalties and dismissal of this case with prejudice.

In the Court's view, both parties oversimplify the Sixth Circuit's caselaw on this particular point. Again, succeeding on a hostile work environment claim generally requires a plaintiff to show (at trial) or plausibly suggest (at the pleading stage) the existence of race-based harassment that was "sufficiently severe or pervasive to alter the conditions of … employment and create an abusive working environment." *Strickland v. City of Detroit*, 995 F.3d 495, 505 (6th Cir. 2021) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The "environment must be both objectively and subjectively hostile," meaning "that the plaintiff not only perceived the work environment as hostile, but that a reasonable person would have found it hostile or abusive as well." *Id.* at 505–06 (quoting *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016)). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 512 (6th Cir. 2011) (quoting *Harris*, 510 U.S. at 23). Because Title VII is not a "code of workplace civility," "[o]ccasional offensive utterances do not [generally] rise to the level required to create a hostile work environment." *Id.* at 512–13 (quoting *Grace v. USCAR*, 521 F.3d 655, 679 (6th Cir. 2008)).

But against that backdrop, the Sixth Circuit has also stated that "even a single incident of racial harassment, including the use of an egregious racial slur like the n-word 'may be so severe as to constitute a hostile work environment.'" *Smith v. P.A.M. Transp., Inc.*, 154 F.4th 375, 392 (6th Cir. 2025) (quoting *Reed v. Procter & Gamble*

*Mfg. Co.*, 556 F. App'x 421, 433 n.2 (6th Cir. 2014)). In that same opinion, it also noted that other circuits have said that a "'one-time use' of an 'egregious' epithet like the n-word 'can in some circumstances warrant Title VII liability.'" *Id.* (first quoting *Scaife v. U.S. Dep't of Veterans Affs.*, 49 F.4th 1109, 1116 (7th Cir. 2022); and then citing *Woods v. Cantrell*, 29 F.4th 284, 285 (5th Cir. 2022) (finding a supervisor's one-time usage of the phrase "[l]azy [m]onkey [a]ss n****r" to an African American employee sufficient to state a claim for hostile work environment)). Such epithets, the court said, are "'odious' and 'degrading and humiliating in the extreme' when used as an insult against African Americans.'" *Id.* (quoting *Spriggs*, 242 F.3d at 185).

But as the phrases "may be" or "can in some circumstances" in the quotations above suggest, context still matters. For example, in *Williams*, the Sixth Circuit concluded that there was insufficiently severe or pervasive conduct where a "plaintiff's supervisor called Jesse Jackson and Al Sharpton 'monkeys' and said that Black people should 'go back to where [they] came from'—comments that were made one time over the course of two days and were not about the plaintiff." *Id.* (quoting *Williams*, 643 F.3d at 506, 513). In *P.A.M. Transport*, by contrast, in finding sufficiently severe or pervasive conduct did exist, the Sixth Circuit ultimately relied on the fact that the plaintiffs were "directly called 'monkey' and 'monkey ass' by their supervisors on multiple occasions over time." *Id.*

Looking to other circuits, in *Scaife*, the Seventh Circuit held that a single use of the n-word was not "sufficiently severe or pervasive when considering the totality of the circumstances," which included, among other factors, that (1) the remark was

made outside of the plaintiff's presence, (2) the plaintiff learned about the remark after the fact, and (3) the remark did not come from a direct supervisor. 49 F.4th at 1116–17. And in *Woods*, the Fifth Circuit determined that a particularly odious remark—"[l]azy [m]onkey [a]ss [n]***r"—directed straight at the plaintiff was "sufficiently severe," but it also noted that the remark came from the plaintiff's direct supervisor and was made in the presence of other employees. 29 F.4th at 285 (citation omitted).

While none of these cases are directly on point, certain principles nonetheless emerge. When the plaintiff relies on a single utterance of a racial epithet, it seems to matter (1) whether the comment comes from the employee's supervisor, (2) whether the comment was made in the presence of others and who those others were, and (3) whether the comment was directed at the plaintiff him- or herself (as opposed to a comment made in the plaintiff's presence, but about others).

At bottom, the significance of Holmes' remark is more complicated as a legal matter than either party suggests. But the Court concludes that, in assessing whether a single utterance of a racial epithet—even an egregious epithet like the one alleged here—gives rise to a plausible inference of "pervasive" discrimination that "permeates" the workplace, creating an "abusive working environment," *Ogbonna-McGruder*, 91 F.4th at 839, the Court needs more context than Gragston provides. That is, using its "judicial experience and common sense," *Blanche*, 2026 WL 1211480, at *4 (quoting *Bruce*, 168 F.4th at 377), the Court cannot conclude, on the facts that Gragston has alleged to date, that the one-time remark, from a subordinate,

during an undescribed "workplace interaction," with no indication of who else may have been present to hear the remark, gives rise to a plausible inference of a hostile work environment. And, as he points to no other factual allegations supporting that claim in his opposition to the motion to dismiss, dismissal is warranted.[5] That said, as further discussed below, because it is certainly possible that Gragston could cure the shortcomings in this claim through additional allegations that either (1) provide greater context for the alleged remark, or (2) offer further instances in which allegedly discriminatory conduct occurred that would buttress the inference of a workplace permeated with discriminatory conduct, the Court will dismiss this claim without prejudice.

### B. Gragston's Disparate Treatment and Retaliation Claims Fail Because He Does Not Adequately Allege an Adverse Employment Action.

Turn next to Gragston's disparate treatment and retaliation claims. As a reminder, he brings the former under both Title VII and the ADA, and the latter under Title VII alone. (Doc. 17, #85–86). As already noted, Title VII bars discrimination as to the terms and conditions of employment based on race. 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation based on opposition to discriminatory employment practices. *See id.* § 2000e-3(a). The ADA, on other hand, bars employers from discriminating "against a qualified individual on the basis of

[5] True, Gragston's complaint includes some additional allegations. He says, for example, that another employee spread rumors that Gragston sold drugs. (Doc. 17, #85). Gragston further contends that he submitted numerous internal complaints "regarding racial discrimination, defamation, and hostile workplace conditions." (*Id.*). But neither party so much as even *mentions* those allegations in their briefing on the motion to dismiss, so the Court declines to sua sponte consider their potential implications here.

disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Id.* § 12112(a).

As above, a plaintiff pleading discrimination under Title VII or the ADA need not plead a prima facie case. *Finley v. Miami Univ.*, 504 F. Supp. 3d 838, 844 (S.D. Ohio 2020) (Title VII); *Lonergan v. Gallagher Sharp, LLP*, No. 25-3808, 2026 WL 1507759, at *4 (6th Cir. May 29, 2026) (ADA). Rather, the plaintiff "is only required to plead a plausible case of [race or] disability discrimination." *Thurman v. City of Frankfort*, No. 3:21-cv-13, 2022 WL 701009, at *2 (E.D. Ky. Mar. 8, 2022). The same rule extends to Title VII retaliation claims. *Finley*, 504 F. Supp. 3d at 849.

That said, even at the Rule 12(b)(6) stage, a plaintiff must sufficiently allege that they were subject to an adverse employment action. *See Edwards v. City of Cincinnati*, No. 23-3083, 2023 U.S. App. LEXIS 22057, at *4–6 (6th Cir. Aug. 21, 2023) (affirming dismissal of plaintiff's race discrimination claim based on failure to adequately plead constructive discharge). Here, the only adverse employment action that Gragston alleges with specificity is constructive discharge.[6] (*See* Doc. 17, #85–86). But, as in *Edwards*, Gragston's allegations on this front do not pass muster.

---

[6] Admittedly, Gragston's amended complaint does state, with no factual adornment, that Amazon "reassign[ed] him." (Doc. 17, #86). And his response states, again with no factual elaboration, that Amazon subjected him to "heightened scrutiny, changes in working conditions, and escalating hostility rather than remediation." (Doc. 27, #137). But the latter needed to appear in Gragston's pleading, not his response to Amazon's motion to dismiss. And in any event both the reference to "reassignment" in the amended complaint and the claims of "heightened scrutiny" in the response are too conclusory to pass muster under *Twombly/Iqbal*. That is true even under the liberal construction to which a pro se plaintiff's pleading is entitled.

To establish constructive discharge, a plaintiff must show that his working conditions were "objectively intolerable." *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020). And as the Sixth Circuit has explained, "[t]his is a tough row to hoe." *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018). The Sixth Circuit considers a bevy of factors in deciding whether constructive discharge occurred. These include:

> (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status.

*Logan v. Denny's, Inc.*, 259 F.3d 558, 569 (6th Cir. 2001) (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Gragston does not allege facts plausibly suggesting that he was constructively discharged under that framework. He merely alleges that Amazon suggested at some unspecified point that he should "'move on' to another company," which, he says, "demonstrated retaliatory intent and contributed to [his] constructive discharge." (Doc. 17, #85). That vague, nonspecific allegation, almost entirely devoid of facts, does not come close to plausibly alleging that Gragston's work conditions as a whole were "objectively intolerable." *Tchankpa*, 951 F.3d at 814. Thus, because Gragston fails to plausibly allege an adverse employment action, his discrimination and retaliation claims fail. *Edwards*, 2023 U.S. App. LEXIS 22057, at *6–7.

### C. Gragston's "Constructive Discharge" Claim Fails Because Constructive Discharge is Not an Independent Cause of Action.

Finally, the Court addresses Gragston's "constructive discharge" claim. Constructive discharge is a "means of proving the element of an adverse employment action where the employee quits instead of being fired," not a standalone claim. *Cluck v. Brentlinger Enters., Inc.*, No. 2:22-cv-290, 2025 WL 580342, at *4 n.2 (S.D. Ohio Feb. 21, 2025) (quoting *Donnelly v. Health Mgmt. Sols., Inc.*, No. 2:19-cv-5303, 2022 WL 22883109, at *3 (S.D. Ohio Feb. 8, 2022)). So, Gragston's separate constructive discharge claim fails as a matter of law.

* * *

In sum, Gragston's amended complaint fails to state a claim. In his response, Gragston requests leave to amend as an alternative to termination of this case. (Doc. 27, #138). Gragston has already had the opportunity to amend his pleading once before. (*See* Docs. 14, 17). But that was because the Magistrate Judge denied Gragston's request to proceed pseudonymously. (*See* Doc. 14). And generally, the Court should dismiss with leave to amend "[i]f it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading or state a claim for relief." *Brown v. Matauszak*, 415 F. App'x 608, 614 (6th Cir. 2011) (citation omitted). Because Gragston may be able to remedy some or all of the defects the Court has identified above, at least as to his hostile work environment, ADA, and Title VII retaliation claims, the Court will allow Gragston an opportunity to try. To that end, Gragston shall have **twenty-one days** from the issuance of this order in which to file a motion for leave to file a second amended complaint, attaching the proposed second

amended complaint. If Gragston does not do so, the Court will dismiss this matter without prejudice. But, in offering Gragston this opportunity, the Court reiterates its warning that any further reliance on AI-hallucinated authorities in connection with briefing in this matter will result in sanctions, including monetary penalties and potential dismissal of this case with prejudice. *See* supra note 4.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** Amazon's Motion to Dismiss (Docs. 24, 25). But because Gragston might be able to overcome the deficiencies in his amended complaint, the Court further **ORDERS** that Gragston shall have **twenty-one days** from the issuance of this order in which to file a motion for leave to file a second amended complaint, attaching the proposed second amended complaint. Should he fail to do so, the Court will dismiss this matter without prejudice.

**SO ORDERED.**

July 29, 2026
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**